SCOTT v. BURROUGHS. See Cases Nos. 9,111 and 9,112.

SCOTT (CHAPMAN v.). See Case No. 2,609.

---

## Case No. 12,526.
### SCOTT v. CHICAGO.
[1 Biss. 510.] [1]

Circuit Court, N. D. Illinois.   Feb., 1866.

BRIDGES — FAILURE TO OPEN DRAW — DAMAGE ON ACCOUNT OF FREEZING—MITIGATING CIRCUM-STANCES—MEASURE OF DAMAGES.

1. The city of Chicago is bound to use proper care and precautions to allow vessels to pass the bridges across the Chicago river. If a vessel gives notice to the proper persons that she intends to move up or down the river, it is the duty of the city to prepare for her passage, and remove any obstacles which may appear. If no notice is given until the whistle sounds, then the proper efforts must be made as soon as practicable thereafter.

2. After ice has formed in the river, less vigilance is required than during the season of navigation. When a vessel has given notice, the same exertion must be made as ever.

3. State of the weather may be considered, and as it is one of the incidents of a bridge, that snow and ice may interrupt its movement, all that can be required of the city is the use of every reasonable effort, as soon as practicable, to remove the obstacle.

4. If the city has been guilty of negligence, and in consequence a vessel has been obliged to cut her way out of the ice, the damages would be, 1st, the necessary expense incurred; 2d, reasonable damages for the delay; 3d, the damages actually sustained by the vessel. But no damages can be given for injuries sustained in doing anything not warranted by skill and prudence.

This was an action on the case by Dwight Scott, owner of the propeller S. D. Caldwell, for damages caused by the neglect to open a bridge across the Chicago river, on account of which the propeller was frozen in, and delayed and damaged.

H. F. Waite, for plaintiff.
S. A. Goodwin, for defendant.

DRUMMOND, District Judge (charging jury). On the afternoon of the 31st day of December, 1863, the propeller S. D. Caldwell, of which the plaintiff is the owner, having had some repairs made in the dock of Doolittle & Olcott, on the south branch of the Chicago river, was proceeding down the river, stern foremost, with the purpose of going to Milwaukee, to carry out a contract made by the propeller to run between that port and Grand Haven, Michigan. There was considerable ice in the river at the time, which, though impeding the progress of the propel-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ler, did not prevent her from making her way somewhat slowly down the river.

Having reached the Madison street bridge, she gave the usual notice by whistle of her approach. The bridge tender and assistant were absent. On the return of the latter, he made some efforts, with the aid of others, to open the draw, but failed, owing, as it seems, to some snow and ice, or other obstacle getting in between the moving and stationary part of the bridge. The weather was becoming cold and the following day, the 1st of January, 1864, was of unexampled severity; so that some of the persons engaged in trying to open the bridge on that day had their hands and feet more or less frozen. The bridge tender returned on the 2d of January, and the next day they succeeded in opening the bridge and the propeller passed through. But in the meantime the cold had so much increased and strengthened the ice, that after winding and trying with her bow, which was cased in iron, to force her way through, the propeller, after some days of trial, relinquished the attempt to go out in that way, and a contract was made with some parties, at a large expense, to cut the ice, by means of which, at length, on the 16th day of January, the propeller was enabled to proceed into the lake and to Milwaukee, where she arrived on the same day. In trying to go through the ice in the river, the propeller sustained considerable damage, and for this, the delay, and the additional expense, the action is brought against the city.

The only material fact controverted, is as to the notice given to the city authorities on the 30th of December. It is claimed on the part of the propeller that on that day notice was given to the proper persons that the propeller would pass down the river on the following day. This is denied by the city, and it is contended that no such notice was given.

The only aspect in which this fact is of importance, is the bearing it may have on the question of care and diligence of the city under the circumstances; because, if notice were actually given on the day before, it was the duty of the city authorities to take measures immediately to remove any obstacle which, upon inspection, might appear to be in the way of opening the bridge; whereas, if no notice were given, as navigation in the south branch was generally closed for the season, the same degree of preparation might not be expected on the part of the bridge tender. But in any event, it was the duty of the city, upon the approach of the propeller, to use all proper and reasonable efforts to open the bridge, looking at the circumstances as they existed at the time.

The Chicago river is a public navigable highway, and vessels have the right to pass up and down, without unnecessary detention; and consequently the propeller S. D. Caldwell had the right to go down the river at the time mentioned. But the right of navigation does not take away the right of crossing the

river; and it must be considered settled that the city has the power to construct bridges for the purpose of crossing, provided the bridges are so constructed and maintained as not materially or unnecessarily to obstruct navigation. The two rights co-exist, and each one must be construed with reference to the other, precisely as we qualify the right to travel along a street by the right to cross it. The navigator must yield something to the foot passenger, just as the latter must yield something to the navigator.

Generally, and perhaps with reason, the navigator has the preference on the Chicago river, as he is permitted to pass at once, while foot passengers and vehicles are constantly being stopped in the season of navigation, in their efforts to cross the bridges.

It follows, from what has been said, that the Madison street bridge was properly there, and the only question in this part of the case is: Was everything done that under the circumstances ought to have been done by the city authorities to enable the propeller to pass through the bridge?

There is no serious objection made to the construction of the bridge, which was what is termed an iron bridge, and moved upon what is called a turn-table on a pier in the middle of the river. The main complaint on the part of the plaintiff is that proper precautions were not taken by the bridge tender, and that the necessary assistance was not there at the time.

Whether this complaint is well founded, must be determined by the light of the facts found to exist when the application was made to pass the bridge. If notice were given the previous day, then, so far as it was practicable,' the proper efforts should have already been made; if no notice were given till the whistle sounded, then the proper efforts should have been made as soon as practicable thereafter. It may be assumed that at the time notice was received, considering the season of the year, the ice in the river, the non-passage of vessels for some days through the bridge, the same degree of vigilance could scarcely be looked for as in the midst of the season of navigation; but, making due allowance for this difference, there ought to have been the same exertions made as at any other time. But of course the jury will take into consideration the state of the weather. For example, while it was the duty of the city to keep the bridge in a condition to be turned, when steamers or vessels could pass up or down the river, still it is one of the incidents of a bridge so constructed that snow and ice may occasionally interrupt the movement, and if, by a sudden change of weather, ice should form so as to obstruct the turning, all that could be required would be the use of every reasonable effort, as soon as practicable, to remove the obstacle. I think every exertion should have been made that, under the circumstances, was practicable, to allow the propeller to pass that night.

The question is not precisely, whether those there did what they could, but is rather, whether there was the necessary and competent assistance there at the time, and whether, if it had been and proper exertions made, the result would have been the same. The probability seems to be that if the propeller had got through the bridge immediately, she would have reached the mouth of the river that night. If it was not practicable to open the bridge that night, was everything done that could in reason be done on the next day and the following day to accomplish it? The cold was intense on the first of January, and the evidence shows that it was with difficulty that men could work in the open air, and yet what could be done ought to have been done.

On the whole, I shall leave it to be decided by the jury whether the city authorities did all that was required of them, all that skill and diligence could effect, to accomplish what the propeller demanded, viz: the opening of the Madison street bridge in order that she might pass down the river as soon as possible.

If the city in all respects performed its duty, then the plaintiff cannot recover, but if it was guilty of neglect, and in consequence thereof the plaintiff has sustained damage, then the city may be held responsible for the loss. If you shall find that the city was guilty of a neglect of duty, and that the plaintiff has thereby suffered damage, the next question is as to the amount of the damages. These would be,—in case the jury find for the plaintiff:

1. The necessary expense paid by him in cutting the propeller out. Though a larger amount was originally agreed on, yet the sum actually paid was $600.

2. The value in the nature of demurrage of the propeller while necessarily detained by the act of the defendant, and in such a manner as fully to indemnify the plaintiff for any loss sustained by him in consequence of such detention.

3. The damage that the propeller actually suffered through the neglect of the city authorities. But the jury should not give anything for injury received in doing what skill and prudence would not warrant the propeller to do. For example, if the propeller persisted in forcing her way through the ice longer than skill and prudence would justify, before the contract for cutting the ice was made, then for such injury compensation should not be given. But it is for the jury to determine how far the damage done to the propeller was the result of want of skill or prudence on the part of the propeller and how far it was the result of the fault of the city authorities.

Verdict for plaintiff.